[Cite as *State v. Isbell*, 2014-Ohio-3204.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

       Plaintiff-Appellee,                    :

                                            No. 13AP-694

v.                                               :          (C.P.C. No. 12CR-1662)

Arnell Isbell,                                   :          (REGULAR CALENDAR)

       Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on July 22, 2014

---

*Ron O'Brien,* Prosecuting Attorney and *Kimberly M. Bond,* for appellee.

*McCord Legal Services,* and *Touré McCord; Kura, Wilford & Schregardus Co., L.P.A.,* and *Sarah M. Schregardus,* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-Appellant, Arnell Isbell, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of possession of heroin, possession of marijuana, several counts of aggravated possession of heroin with firearm specifications, and one count of having a weapon while under disability. For the reasons that follow, we affirm the judgment of the trial court.

**A. Facts and Procedural History**

{¶ 2} On October 11, 2013, Officer J. Severance of the Reynoldsburg Police Department ("RPD") swore out a complaint against appellant in the Franklin County Municipal Court charging him with felonious assault for "knowingly causing serious

physical harm to Roxanne Nolt." According to the complaint, on October 11, 2013, while in his home located at 2265 Hughey Drive, Reynoldsburg, Ohio, appellant "repeatedly struck Nolt in the head with his fists." The Franklin County Municipal Court Clerk issued an arrest warrant authorizing "any law enforcement officer of the State of Ohio * * * [to] bring him/her before the Franklin County Municipal Court without unnecessary delay, to answer to the complaint." (State's exhibit No. 3.)

{¶ 3}   On October 12, 2013, RPD Officer Brian Kiser went to the Hughley Drive residence to serve the arrest warrant. Kiser described the home as a two-story duplex with a single entrance to the street. Kiser testified that he knocked on appellant's door but received no response. When he felt the hood of a parked vehicle he knew to be appellant's, he discovered that it was still warm. Kiser saw the blinds in an upstairs window open briefly and then close. According to Kiser, he heard a voice from inside the home say "I think he's leaving." Kiser then asked one of appellant's neighbors if appellant lived alone, and the neighbor told him that he did.

{¶ 4}   At that point, OfficerKiser called for other officers to come and watch the home while he returned to the station to prepare a warrant to search the residence for appellant. Based upon Kiser's affidavit, a municipal court judge issued a search warrant at 10:30 p.m. on October 12, 2013, authorizing RPD to enter the Hughey Drive residence to "diligently search for * * * [t]he body of [appellant], a black male, DOB: 05-03-1970, 6'2" in height and 205 lbs., black hair and brown eyes." (State's exhibit No. 1.) Kiser requested a SWAT team to execute the warrant because of the seriousness of the offense and appellant's prior history of drug trafficking offenses.

{¶ 5}   RPD Lieutenant Ron Wright led the SWAT team. Based upon the information provided by Officer Kiser, he formulated a tactical plan which included the use of OC gas if appellant did not surrender. Wright instructed his "arrest team" to secure anyone who left the residence with flex cuffs and then get them to a police vehicle where they could be searched and identified. Wright instructed other team members to enter the residence as soon as anyone came out. According to Kiser, Wright made three announcements over the PA system ordering appellant out of the residence. The announcements included a warning that his team would deploy OC gas into the residence

if appellant did not surrender. When appellant did not surrender as ordered, Kiser discharged two OC gas canisters through a second-floor window.

{¶ 6} SWAT team member, Ty Downard, is a narcotics detective with RPD. Detective Downard positioned himself at the front door of the home wearing his battle dress uniform and a gas mask as Lt. Wright made the three announcements over PA system. According to Downard, shortly after Officer Kiser deployed the OC gas, a male black exited the residence and laid down right in front of him. Although Downard knew they were looking for appellant and he had seen a photograph of appellant, he testified that he did not know the identity of the black male who had exited the residence. Downard immediately entered the residence and shouted "search warrant," as he and another officer proceeded up the stairs to the second floor. Downard stated that his gas mask fogged up when the unidentified man exited the residence and that he took it off before entering the home.

{¶ 7} Detective Downard testified that he smelled the odor of marijuana as he entered the residence. When he searched a second floor bedroom Downard observed a clear plastic baggie containing reddish brown pills sitting in plain view on a dresser. Based upon his experience as a narcotics officer, Downard recognized the pills as opiates. According to Downard, he entered the bedroom both to locate the OC gas canisters and to search for appellant or anyone else that may be in the residence. When Downard returned to the first floor, the other SWAT team members informed him that appellant was in custody.

{¶ 8} After the SWAT team exited the residence, Detective Downard escorted Truro Township Firefighter, Kevin Childs, up to the second-floor bedroom where he had found the OC canisters. According to Childs, he found one of the canisters imbedded in the drywall and the other on the floor. Childs quickly determined that the canisters did not present a fire hazard and he exited the residence. While he was in the bedroom, Childs saw a pill bottle sitting on the dresser.

{¶ 9} The SWAT team members gathered outside the residence for debriefing. At that point, Detective Downard informed the team that he had smelled marijuana and seen the baggie of pills. Childs told the officers that he had seen the pill bottle. Downard testified that he asked appellant for permission to search the residence for narcotics, but

appellant refused. Downard then asked Lt. Wright to leave other officers at the residence while he sought a warrant to search the rest of the house.

{¶ 10} Detective Downard's affidavit in support of the warrant states in relevant part:

> On 10/12/11, at approximately 2346 hrs, the Reynoldsburg SWAT team executed the search warrant and did find Isbel [sic] in the residence. While doing this, Det. Downard noticed an odor of marijuana in the apartment. In addition, Det. Downard observed several off red pills wrapped in a sandwich style baggie in plain view, on a dresser in the master bedroom. In Det. Downard's experience and training, pharmaceutical pills in baggies are commonly associated with using or selling narcotics.
>
> * * *
>
> Based on the aforementioned facts, affiant believes that the evidence of Possession of drugs and Drug paraphernalia is being kept at 2265 Hughey Drive.

(State's exhibit No. 2.)

{¶ 11} Judge Green issued the requested search warrant at 1:00 p.m. on October 13, 2013. A search of the residence uncovered heroin, marijuana and a firearm. RPD subsequently charged appellant with several felony drug and firearm offenses. A Franklin County Grand Jury issued a seven-count indictment charging appellant with possession of heroin, possession of marijuana, several counts of aggravated possession of heroin with firearm specifications, and one count of having a weapon while under disability. On July 30, 2012, appellant filed a motion to suppress the evidence uncovered in the search of his residence. Plaintiff-appellee, State of Ohio, opposed the motion. The trial court held an evidentiary hearing on the motion on October 29, 2012. Appellant filed a supplemental motion to suppress on November 16, 2012.

{¶ 12} On January 22, 2013, the trial court issued a decision denying the motion to suppress. Thereafter, on May 29, 2013, appellant entered a plea of no contest to each of the counts in the indictment. Following a pre-sentencing investigation, the trial court convicted appellant of all counts and sentenced him to a concurrent sentence totaling six years with a $7,500 fine. Appellant filed a timely notice of appeal to this court.

## B. Assignments of Error

{¶ 13} Appellant assigns the following as error:

> The trial court erred when it denied Arnell Isbell's Motion to Suppress in violation of the Fourth Amendment to the U.S. Constitution, and Article 1, Sec. 14 of the Ohio Constitution.

## C. Standard of Review

{¶ 14} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Helmbright,* 10th Dist. No. 11AP-1080, 2013-Ohio-1143. Accordingly, an appellate court's standard of review of a motion to suppress is twofold. *State v. Holland,* 10th Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 8, citing *State v. Reedy,* 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5. First, we must determine whether competent, credible evidence supports the trial court's findings. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Second, we must independently determine whether the facts satisfy the applicable legal standard without giving any deference to the conclusion of the trial court. *Id.*

## D. Legal Analysis

{¶ 15} The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14 prohibits unreasonable searches and seizures. *See State v. Moore,* 90 Ohio St.3d 47 (2000). Where a search and seizure is conducted pursuant to a warrant, the burden generally rests with the defendant to prove that the search is unreasonable. *United States v. Stearn,* 597 F.3d 540, 551 (3d Cir.2010), citing *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980). However, a search and seizure conducted without a warrant is per se unreasonable unless it falls within one of the few recognized exceptions to the warrant requirement. *State v. Broughton,* 10th Dist. No. 11AP-620, 2012-Ohio-2526, ¶ 15, citing *State v. Ford,* 10th Dist. No. 07AP-803, 2008-Ohio-4373, ¶ 19. Consequently, when the police conduct a search or seizure without a warrant, the burden shifts to the government to prove exigent circumstances or another exception to the warrant requirement. *Id. See also State v. Fisher,* 10th Dist. No. 10AP-746, 2011-Ohio-2488, ¶ 17. Additionally, suppression of evidence gained from the warrantless entry would also reach evidence gained from the subsequent warranted search as it would " 'be derivative of an illegality, or "fruit of the poisonous tree." ' " *State v. Jenkins,* 104 Ohio

App.3d 265 (1st Dist.1995), fn. 4, quoting *State v. Carter*, 69 Ohio St.3d 57, 67 (1994), citing *Nardone v. United States,* 308 U.S. 338 (1939).

{¶ 16} RPD obtained three separate warrants in this case. The first was the arrest warrant for the body of appellant. The second was the search warrant authorizing RPD to enter appellant's home to search for appellant. The third warrant was the search warrant authorizing RPD to enter appellant's home to search for narcotics, drug paraphernalia, and firearms. In denying appellant's motion to suppress, the trial court stated:

> [T]he justification for entry into the premises was twofold. *When the defendant exited the residence the SWAT team entered because they were not positive that the person who exited was the defendant.* Even if they knew it was the defendant the testimony was that they were entering the residence to clear it because they suspected another person inside and the fact they utilized the OC gas. Second, because of the use of OC gas they wanted to make sure the canisters did not end up in a location that may create or cause an electrical fire or harm someone.

(Emphasis added.) (R. 75, Jan. 22, 2013 Decision, 4.)

{¶ 17} The primary reason that the trial court denied appellant's motion to suppress is that the October 13, 2013 warrant authorized entry into the home to search for appellant and that RPD found the evidence which led to the third search warrant in plain view as it executed that warrant. Appellant argues that the search warrant permitted entry into the home for the limited purpose of searching for appellant's person and that the warrant no longer provided a lawful basis to enter the residence after appellant had exited. The trial court, however, specifically found that when the SWAT team entered the residence, they "were not positive that the person who exited was the defendant." The evidence in the record supports the trial court's factual finding.

{¶ 18} Officer Kiser testified that when he went to the Hughey Drive residence to serve the arrest warrant, he heard someone inside the house say "I think he's leaving." Based upon this fact, Kiser reasonably believed that there could be more than one person inside the home. The officers who watched the residence while Kiser secured the second warrant did not see anyone enter or exit the residence. Kiser told the SWAT team about the voice he had heard from inside the home. Lt. Wright testified that the SWAT team

devised their tactical plan based on the possibility that appellant was not alone in the home.

{¶ 19} R.C. 2935.12(A) provides as follows:

> When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance.

{¶ 20} There is no doubt that the second warrant issued in this case permitted RPD to enter appellant's home by force, if necessary, in order to search for appellant. Appellant does not argue that RPD failed to demonstrate probable cause in support of the second warrant. The evidence further demonstrates that appellant refused to exit his home after receiving three warnings.

{¶ 21} The testimony of the officers at the scene establishes that, within five to ten seconds after Officer Kiser shot two OC gas canisters into the second story window, a black male exited the front door, with his hands in the air, and stood just outside the doorway. Lt. Wright testified that the man was wearing a T-shirt and boxer shorts. He did not recognize the man. Detective Downard testified that his vision was obscured when his gas mask had fogged up and that he did not recognize the man who exited the residence.

{¶ 22} Officer Kiser, who was still across the parking lot at the time, ordered the man to the ground. He did not recognize appellant from that distance. When Kiser reached the doorway, the unidentified man was laying face down outside the doorway. Kiser placed the man in flex cuffs and led him back to the police cruiser. He did not believe that the man identified himself. Kiser testified that he did not look at the man's face until he reached the cruiser and that he immediately left the man with another officer to return to his position. On cross-examination, Kiser acknowledged that he had seen a photograph of appellant and that he knew appellant's general description from the warrant, but he insisted that when he saw a man exit the residence he "had no idea who it was." (Tr. 69.)

{¶ 23}  Lt. Wright testified that, once Officer Kiser got the man to the cruiser, he compared the man's face to the photograph of appellant and he was able to make a positive identification. According to Wright, the SWAT team was already inside the residence at that time. Wright stated that either he or Kiser announced to the SWAT team that they had taken appellant into custody.

{¶ 24} Based upon the testimony on the record, we can find no fault in the trial court's conclusion that Detective Downard and the other members of the SWAT team entered the residence before appellant was identified and that they did so with a reasonable belief that appellant may still be in the home. In short, the trial court did not err when it determined that RPD lawfully entered appellant's residence pursuant to the second search warrant.

{¶ 25} The plain-view doctrine permits law enforcement to " 'seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a right of access to the object itself; and (3) the object's incriminating character is immediately apparent.' " *State v. Hunt*, 10th Dist. No. 12AP-103, 2013-Ohio-5326, ¶ 51, quoting *State v. Alihassan*, 10th Dist. No. 11AP-578, 2012-Ohio-825, ¶ 11, citing *Horton v. California*, 496 U.S. 128, 136-37 (1990). As noted above, the SWAT team entered the residence as soon as the unidentified man had been removed. Detective Downard detected the odor of marijuana immediately upon entry into the home as he had removed his gas mask. Downard quickly proceeded to the second-floor bedroom to search for appellant and anyone else who might be in the residence. At that point, he observed the baggie of pills on the dresser. Downard was familiar with opiates from his experience as a narcotics detective.

{¶ 26} Detective Downard testified that he did not learn that appellant had been identified until he went back downstairs. By that time, Downard had already detected the odor of marijuana and had seen the baggie with pills. Rather than seizing the evidence, Downard asked appellant for permission to search his home for narcotics. When appellant refused, Downard swore out an affidavit setting forth the specific facts he observed. Judge Green found that Downard's affidavit established probable cause to search appellant's residence for evidence of narcotics, drug paraphernalia, and firearms.

Contrary to appellant's assertion, the evidence establishes that RPD developed probable cause for the third warrant during the lawful execution of the second warrant.

{¶ 27} Appellant contends that RPD should have waited for a positive identification of the individual who surrendered before entering the home to execute the second warrant. However, this court has stated that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if doing so would gravely endanger their lives or the lives of others." *Columbus v. Montgomery*, 10th Dist. No. 09AP-537, 2011-Ohio-1332, ¶ 39, citing *State v. Myers*, 3d Dist. No. 9-02-65, 2003-Ohio-2936, ¶ 9, citing *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 299 (1967). The evidence shows that the SWAT team formulated their tactical plan based upon appellant's known criminal history and a reasonable belief that there could be more than one individual in the home. Officer Kiser testified that the SWAT team elected to use OC gas in order to temporarily incapacitate appellant, or anyone else who might be in the residence, prior to sending officers inside appellant's home. The stated reason for this strategy was officer safety. Detective Downard and Lt. Wright corroborated Kiser's testimony. The Fourth Amendment does not require officers to delay entry under such circumstances. *Id.*

{¶ 28} Appellant's alternative basis for suppression is that Officer Kiser's affidavit in support of the third warrant contains a material misrepresentation of fact. The affidavit states that "the Reynoldsburg SWAT team executed the search warrant and did find Isbel [sic] in the residence." Appellant argues that the evidence conclusively demonstrates that he was arrested "outside the residence." Kiser agreed that RPD arrested appellant after he left the residence, but he insisted that RPD first "found" appellant in his home. (Tr. 187.) Our review of the exchange between Kiser and appellant's counsel confirms that the dispute is a matter of semantics. Moreover, the record shows that Detective Downard detected the odor of marijuana immediately upon entry into the residence and that he saw the baggie of pills in plain view as he executed the second warrant. Given our conclusion that such facts provide probable cause for the third warrant, we find that the location of the arrest is not material to our analysis. While the fact that appellant's arrest occurred outside of the residence may have been material to an exigent circumstance analysis, the fact of the matter is that RPD developed probable cause

for the third search warrant during the lawful execution of the second search warrant. Under the circumstances of this case, the State was not required to prove the existence of facts justifying an exception to the warrant requirement.

{¶ 29} For the foregoing reasons, we hold that the trial court did not err when it determined that RPD developed the facts supporting the third warrant during the lawful execution of the second search warrant. As a result, the State was not required to prove that exigent circumstances or another exception to the warrant requirement justified the search. Accordingly, we need not pass upon the trial court's alternative basis for denying the motion to suppress. Appellant's assignment of error is overruled.

{¶ 30} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

————————————